UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY R. FUCINARI,

                Plaintiff,                              Civil Action No. 12-13308

                v.                                  Hon. Gershwin A. Drain
                                            Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]

Plaintiff Amy R. Fucinari appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB"). (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 13 & 14.) For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 14) be denied, that Defendant's Motion for Summary Judgment (Dkt. 13) be granted, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Amy R. Fucinari was 20 years old on the date she alleges he became disabled. (Tr.) Plaintiff graduated from high school and attended about three years of college at the University of Michigan–Flint. (Tr. 27, 385.) Plaintiff previously worked as a day care worker and in a fast food restaurant. (Tr. 28-29.) Plaintiff alleges that she cannot work because of symptoms that she experiences as a result of her depression, anxiety, and bipolar disorder, together with the side effects of her medications. (Tr. 29.)

### A. Procedural History

On December 28, 2009, Plaintiff applied for disability benefits asserting that she became unable to work on November 30, 1995. (Tr. 80-81.) The Commissioner initially denied Plaintiff's disability application on July 21, 2010. (Tr. 46-50.) Plaintiff then requested an administrative hearing, and on September 22, 2010, she appeared before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered her case *de novo*. (Tr. 20-44.) James M. Fuller, an impartial vocational expert, also appeared and testified at the hearing, along with Anthony Fucinari, Plaintiff's husband. (*Id.*) Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. (Tr. 22.) In a November 1, 2010 decision, the ALJ found that Plaintiff was not disabled. (Tr. 5-19.) The ALJ's decision became the final decision of the Commissioner on May 5, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Plaintiff filed this suit on July 26, 2012. (Dkt. 1, Compl.)

### B. Relevant Medical Evidence

ALJ Perez determined that Plaintiff did not engage in any substantial gainful activity from

her alleged onset date of November 30, 1995 until her last date insured of June 30, 1997.  (Tr. 10.)

Plaintiff submitted over 400 pages of  medical evidence that ranged in date from 1987 until 2010.

(*See* Tr. 162-585.) However, as discussed in Part IVA, *infra*, only evidence from the relevant time

period, or that specifically relates to Plaintiff's medical condition during the relevant time period

is summarized below.

 In November 1993, Plaintiff overdosed on Excedrin and was taken to the emergency room.

(Tr. 199.)  The next day, Plaintiff was taken to the Knollwood Clinic where Plaintiff reported that

she overdosed because of issues she was having with her father.  (*Id.*)  Although the doctor's notes

are difficult to read, it appears that individual and/or family therapy was recommended.  (*Id.*)

 In March 1995, Plaintiff again presented to the Knollwood Clinic with complaints of

depression and mood swings.  (Tr. 198.)  The doctor there referred Plaintiff to a counselor and

prescribed Efflexor.  (*Id.*)  In counseling, Plaintiff complained of not having focus in her life and

having a hard time feeling enjoyment. (Tr. 197.) Plaintiff's physician diagnosed her with dysthymic

disorder.  (*Id.*)  In April 1995, Plaintiff reported that she did not feel any different after being on

Efflexor, and her physician recommended Prozac.  (*Id.*)

 Plaintiff continued to see her physician from April until November 1995.  (Tr. 192-96.)

During this time, Plaintiff noted episodes of hypersensitivity, but also reported improvement and

stabilization while taking medication.  (*Id.*)  In July 1995, Plaintiff's physician prescribed Xanax

which specifically helped to reduce episodes of hypersensitivity.  (Tr. 193.)

 On November 22, 1995, Plaintiff was admitted to Crittendon Hospital after overdosing on

Prozac, Xanax, and Tylenol.  (Tr. 562-69.)  Plaintiff's overdose was precipitated by a recent break-

up with her boyfriend.  (Tr. 562.)   Plaintiff's diagnosis was major depression, histrionic and

borderline personality disorder, and drug overdose, and she was given a GAF score of 40.  (Tr. 565.)
During the psycho-social consultation at Crittendon, Plaintiff reported that she had been working
30 to 37 hours per week at a day care center for the past four months.  (Tr. 567.)  Previous to this
job, Plaintiff reported that she had been working at another day care center for six months.  (*Id.*)
Plaintiff further reported that she was currently in her second year at the University of
Michigan–Flint studying to be an elementary school teacher.  (*Id.*)  Due to insurance reasons,
arrangements were made to transfer Plaintiff to Lapeer Regional Hospital; however, upon arrival,
Plaintiff declined admission because she reported feeling considerably better.  (Tr. 191, 564.)
Following discharge, Plaintiff's physician noted that Plaintiff visited the emergency room two days
later, on November 27, 1995, due to an anti-psychotic given to her by her mother.  (Tr. 191.)

Notes from Plaintiff's physician during December 1995 indicated that she continued self-
defeating behaviors, leading to guilt and anxiety.  (Tr. 189, 191.)  During May 1996, Plaintiff saw
her physician five times. (Tr. 188-89.)  Plaintiff reported feelings during these visits that ranged
from "depressed" to "somewhat down" to "emotionally stable" to "pretty good."  (Tr. 188.)  On May
9, 1996, Plaintiff's physician discussed possible hospitalization, but Plaintiff refused in-patient
treatment at that time.  (*Id.*)

On June 3, 2010, Dr. J. Gange a consultant with Disability Determination Services ("DDS")
completed a psychiatric review technique form wherein he concluded that there was insufficient
documentation of a mental impairment during the relevant time period to find that Plaintiff was
disabled. (Tr. 171.)  Dr. Gange noted that Plaintiff reported feelings of depression since the seventh
grade, suicidal ideation, and two hospitalizations (one prior to Plaintiff's alleged onset date).  (Tr.
183.)  Dr. Gange further noted that Plaintiff reported that her medications had side effects that

4

caused her to have problems with concentration and sleepiness.  (*Id.*)

### C.  Testimony at the Hearing Before the ALJ

#### 1.  *Plaintiff's Testimony*

At the time of the administrative hearing, Plaintiff was married and had three children ages four, eight, and eleven.  (Tr. 27.)  Plaintiff had a driver's license and reported being able to drive.  (*Id.*)  Plaintiff testified that she had some depression, bipolar disorder, and anxiety.  (Tr. 28.)  Plaintiff testified that she was being treated for her bipolar disorder about one time per month by Dr. Robert Zimmerman.  (Tr. 29.)  Plaintiff reported taking several medications including: Depakote for bipolar disorder, Celexa for depression, and Doxepin for sleep disturbances and depression.  (*Id.*)  Plaintiff also reported taking two medications to control her diabetes.  (*Id.*)

Plaintiff testified that she overdosed when she was 18 years old (in 1993) and was admitted for overnight observation to Lapeer Regional Medical Center.  (Tr. 29-30.)  Plaintiff believed the diagnosis at this time was depression.  (Tr. 31.)  Plaintiff testified that the next time she overdosed was in 1995, and was admitted for overnight observation to Crittendon Hospital.  (Tr. 30, 32.)  Plaintiff was again diagnosed with depression.  (Tr. 31.)  Plaintiff testified that her depression was caused by stressors at work and a recent break-up with her boyfriend.  (Tr. 31.)  Plaintiff reported that her depression "eventually gets better within months," and that her manic state  goes "on and off."  (Tr. 33.)

During this same time, Plaintiff testified that she was going to college.  (*Id.*)  Plaintiff testified that she was able to function during this time because she was taking Zoloft and Xanax.  (Tr. 36.)  However, Plaintiff testified that after her hospitalization for the overdose, she was not able to function normally.  (*Id.*)  Although she was going to school part-time, she testified to having

"high-anxiety," and she stopped working. (*Id.*) Plaintiff reported that she got married in 1998. (*Id.*)

2.      *Plaintiff's Husband's Testimony*

Plaintiff's husband, Anthony S. Fucinari, testified that he knew Plaintiff only one year prior to her date last insured. (Tr. 38.) Mr. Fucinari testified that he met Plaintiff in 1996. (*Id.*) From 1996 to 1997, Mr. Fucinari indicated that he noticed that Plaintiff had an inability to work. (Tr. 39.) Further, Mr. Fucinari testified that he noticed a "bit of anxiety." (*Id.*) "Everyday, simple day-to-day tasks were very difficult for her," testified Mr. Fucinari. (*Id.*) Mr. Fucinari indicated that Plaintiff would break down in crying spells during this time and tell him that it was due to anxiety and depression. (Tr. 39-40.) Mr. Fucinari testified that Plaintiff was taking medication for depression during 1996 and 1997. (Tr. 40.) Mr. Fucinari wanted to testify about how Plaintiff's anxiety and depression had increased over their years of marriage, however, ALJ Perez advised him that anything that occurred beyond the date last insured was not relevant to the extent it did not specifically bear on Plaintiff's condition during the relevant time period. (Tr. 40-41.)

2.      *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with varying functional limitations. The VE offered testimony about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who had no exertional limitations of lifting or standing. (Tr. 42.) The ALJ asked the VE to consider jobs that would provide for routine production and stress, and simple job assignments. (*Id.*) The VE testified that the hypothetical worker would be unable to qualify for Plaintiff's past relevant work, but could perform other work as an assembler, packager and sorter. (Tr. 42-43.) The VE then testified that there are significant numbers of these jobs available in the State. (Tr. 43.) However,

6

the VE testified that Plaintiff's alleged non-exertional impairments (inability to complete day-to-day tasks, crying spells, unreliability based on never knowing what Plaintiff's emotional state would be day-to-day, and drowsiness) would preclude competitive employment.  (Tr. 43.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age,

7

education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Perez found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of November 30, 1995.  (Tr. 10.)  At step two, he found that Plaintiff had the following severe impairments: major depressive disorder, bipolar disorder, anxiety disorder, and diabetes mellitus.  (*Id.*)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment.  (*Id.*)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "unskilled work, with simple and routine production tasks."  (Tr. 12.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 14.)  At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity.  (*Id.*)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 15.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply

8

the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

9

## IV.  ANALYSIS

### A.  Substantial Evidence Supports the ALJ's Conclusion That Plaintiff's Mental Conditions Do Not Meet Or Equal A Listing

Plaintiff argues that the ALJ's conclusion that her mental condition does not meet or equal a listing is not supported by substantial evidence.  (Pl.'s Mot. Summ. J. at 1.)  Specifically, Plaintiff contends that all of her medical records, even those that post-date her date last insured ("DLI"), should be considered because she was not properly diagnosed as being bipolar until 2001, four years after her DLI.  (*Id*.)

The case law and regulations are clear that not only must a claimant have a severe impairment prior to the DLI, the impairment must also be disabling prior to the DLI for the Plaintiff to be eligible for benefits.  "[E]vidence of a claimant's post-DLI condition, to the extent that it relates back, is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to that date." *Lancaster v. Comm'r Soc. Sec.*, No. 1:07-cv-0044, 2009 U.S. Dist. LEXIS 55343, at *33 (M.D. Tenn. June 29, 2009) (citing 20 C.F.R. 416.945(a)(1); *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)).  The critical inquiry in this case, therefore, is whether Plaintiff was able to establish a disability on or before her date last insured—June 30, 1997.  *See* 42 U.S.C. § 423 (a), (c).  As such, the relevant medical evidence is evidence dated prior to June 30, 1997, or evidence that relates back to Plaintiff's medical condition during the relevant time period.  *Price v. Chater*, No. 96-5092, 1996 U.S. App. LEXIS 34006, *5 (6th Cir. Nov. 27, 1996) (citing *King v. Sec'y of Health and Human Svcs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.")).

Significantly, Plaintiff does not identify any specific post-DLI evidence that the ALJ did not

consider or that he mischaracterized that would require an alternate outcome at step three.  Instead, Plaintiff makes the sweeping argument that all post-DLI evidence should be considered because she was not formally diagnosed as bipolar until 2001.  (Pl.'s Mot. Summ. J. at 1.)  Such a lack of detail would in most cases end the Court's inquiry.  *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)).  Because Plaintiff is proceeding *pro se*, the Court has made an independent review of the record.  Based on that review, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's mental conditions do not meet or equal a listing.

Plaintiff asks the Court to consider all post-DLI evidence.  But most of the evidence is dated years after Plaintiff's date last insured, and, therefore, attenuated from the critical time period at issue.  More detrimental to Plaintiff's argument, however, the Court did not find any post-DLI evidence that specifically indicated that Plaintiff was severely impaired during the relevant time.  *See Price*, 1996 U.S. App. LEXIS 34006, at *8 (finding no objective evidence of disabling medical condition was fatal to plaintiff's claim).

Moreover, during the relevant time period the ALJ concluded that Plaintiff was only mildly restricted in all three "paragraph B" criteria.  (Tr. 11.)  Specifically, the ALJ determined that Plaintiff was only mildly restricted in her activities of daily living.  (*Id*.)  During this time, while Plaintiff testified that she stopped working (Tr. 36), she was able to maintain her college course work at the University of Michigan–Flint, reported going out all of the time, had no problems with personal care, and was able to care for her children.  (Tr. 11, 125-30, 141-46.)  Plaintiff also reported that she was able to clean, do laundry, and shop for groceries.  (*Id*.)

11

The ALJ also determined that Plaintiff was only mildly restricted in the area of social functioning. (Tr. 11.)  The ALJ noted that while the record reflected mood swings and states of depression to hypomania, Plaintiff reported that she was able to manage her depressive episodes with medication.  (Tr. 11, 36.)  Moreover, the ALJ reasoned that Plaintiff met her husband in 1996, they married in 1998, and have since had three children together.  (Tr. 11, 36.)  Also, during the relevant time, Plaintiff was only hospitalized one time and was discharged the next day.  (Tr. 562-69.)

With regard to concentration, persistence or pace, the ALJ determined that Plaintiff only had mild difficulties.  (Tr. 11.)  While the record reported a loss of energy and motivation, Plaintiff reported that she was able to function while on medication.  (Tr. 11, 36.)  Moreover, Plaintiff reported that she cleaned, did laundry, and shopped for groceries.  (Tr. 11, 125-30, 141-46.)  During this time Plaintiff was also taking college courses at the University of Michigan-Flint.  (*Id.*)

The ALJ also concluded that Plaintiff only experienced one to two episodes of decompensation, each of extended duration.  (Tr. 11.)  During the relevant period, Plaintiff was hospitalized only one time and was discharged the next day.  (Tr. 562-69.)  Additional hospitalizations occurred outside the relevant period, in 1993 and 2001.  The ALJ concluded: "[b]ecause Claimant's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the paragraph B criteria were not satisfied."  (Tr. 11.)

For all of these reasons, the Court finds that substantial evidence supports the ALJ's conclusions that Plaintiff's mental conditions do not meet or equal a listing.

### B.    Substantial Evidence Supports the ALJ's Credibility Assessment

12

Plaintiff also challenges the ALJ's credibility determination. (Pl.'s Mot. Summ. J. at 2.) The Court concludes that Plaintiff has not demonstrated that the ALJ reversibly erred in assessing her credibility.

A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ, however, must not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.,* 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996

13

WL 374186 at *2.

Here, Plaintiff claims that she testified that she could not function and was unable to work after her 1995 overdose, and the ALJ's misinterpretation of her testimony on this point is reversible error. (Pl.'s Mot. Summ. J. at 2.) The Court believes, however, that the ALJ merely discounted Plaintiff's testimony as not credible for the reasons stated in his opinion. Indeed, ALJ Perez gave detailed reasons for discounting Plaintiff's testimony. (Tr. 12-14.) Specifically, the ALJ explained that although Plaintiff's mental impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. (Tr. 13.) In support, ALJ Perez noted that during the relevant time period, Plaintiff had only one hospitalization. (Tr. 13, 562-69.) Following this hospitalization, Plaintiff continued treatment with her primary care physician including prescribed medications for symptom management. (*See* Tr. 13, 187-89.) On May 9, 1996, Plaintiff's physician discussed possible hospitalization for depressive symptoms; however, Plaintiff indicated that she was not interested at that time. (Tr. 13,188.) On May 28, 1996, Plaintiff reported that she was "stable" and "feeling pretty good," after discontinuing use of Prozac. (Tr. 187.) ALJ Perez noted a break in treatment notes from February until December 1997. (Tr. 13.) Moreover, the ALJ noted that during the relevant time, Plaintiff continued attending college classes at the University of Michigan–Flint. (Tr. 13, 27, 385.) While Plaintiff contests the ALJ's interpretation of her testimony, pieced together, the Court finds that Plaintiff's testimony shows that she was, in fact, able to function while taking Zoloft and Xanax during the relevant time period. (*See* Tr. 13, 34, 36.) This is also consistent with Plaintiff's treatment notes. (Tr. 187-89.) Moreover, the ALJ noted that Plaintiff met her husband

14

in 1996, they were married in 1998, and have since had three children.  (Tr. 13.)  At the hearing,

Plaintiff testified that her next hospitalization was not until 2001, four years after the DLI.  (Tr. 14,

35.)  The ALJ concluded: "While the records since 2001 may reveal increasing severity of

[Claimant's] mental impairments . . . the medical evidence pertaining to the relevant period, between

Claimant's alleged onset date and date last insured, as well as testimony, do not support Claimant's

allegations of disability prior to June 30, 1997."[1]  (Tr. 14.)

Plaintiff's argument essentially asks the Court to re-weigh the evidence; however, this

Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination

absent a compelling reason.  *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011).

The Court finds no such compelling reason as substantial evidence supports the ALJ's credibility

determination.

### C.      Substantial Evidence Supports the ALJ's Conclusion That Substantial Jobs Exist in the National Economy

Plaintiff finally argues that substantial evidence does not support the ALJ's conclusion that

substantial jobs exist in the national economy that she is able to perform.  (Pl.'s Mot. Summ. J. at

4.)  Plaintiff specifically contends that taking college classes and having a relationship with her

husband do not amount to substantial evidence sufficient to support the ALJ's residual functional

capacity ("RFC") assessment.  (Pl.'s Mot. Summ. J. at 4.) (Tr. 17.)

"Substantial evidence may be produced through reliance on the testimony of a vocational

---

[1]  The Court notes that the ALJ counseled Plaintiff at the administrative hearing that if she receives an unfavorable ruling, that she should consider applying for supplemental security income ("SSI") because she would not be restricted by the date last insured.  (Tr. 40.)  Indeed, the Court's review of the record indicates that Plaintiff's mental impairments increased in severity following her date last insured.

expert in response to a hypothetical question . . . if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987) (internal citations omitted); *see also Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 632 (6th Cir.2004). Here, the VE testified that a hypothetical individual could perform work as an assembler, packager and sorter. (Tr. 42-43.) Due to Plaintiff's alleged non-exertional impairments, however, the VE precluded competitive employment. (Tr. 43.) As discussed in Part IVB, *supra*, the ALJ's rejection of the mental limitations from the RFC was supported by substantial evidence. Therefore, the ALJ could reasonably rely on the VE's testimony regarding the first hypothetical without the mental limitations. The Court concludes that substantial evidence supports this conclusion.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 14) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 13) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections,

16

but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: May 14, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 14, 2013.

s/Jane Johnson
Deputy Clerk